[Cite as *Dixon v. Huntington Natl. Bank*, 2014-Ohio-4079.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 100572

## JAMES DIXON, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## HUNTINGTON NATIONAL BANK, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-806584

**BEFORE:** E.T. Gallagher, J., E.A. Gallagher, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** September 18, 2014

**ATTORNEY FOR APPELLANTS**

Brent L. English
Law Offices of Brent L. English
820 Superior Avenue West
The 820 Building, Suite 900
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEES**

**For Huntington National Bank**

Alexander E. Goetsch
Komlavi Atsou
Cavitch, Familo & Durkin Co., L.P.A.
1300 East Ninth Street
20th Floor
Cleveland, Ohio   44114

**For Third Federal Savings & Loan, Etc.**

Janeane R. Cappara
Kirk W. Roessler
Ziegler & Metzger, L.L.P.
2020 Huntington Building
925 Euclid Avenue
Cleveland, Ohio   44115

EILEEN T. GALLAGHER, J.:

{¶1} Plaintiffs-appellants, James and Penny Dixon ("the Dixons"), appeal from the trial court's order granting defendant-appellee's, Third Federal Savings and Loan Association ("Third Federal"), motion to dismiss. The Dixons also appeal from the court's denial of their motion to reconsider the court's judgment granting defendant-appellee's, Huntington National Bank ("HNB"), motion to dismiss. Finding no merit to the appeal, we affirm.

**Facts**

{¶2} In May 2013, the Dixons filed a complaint against Third Federal, HNB, and a group of six attorneys from the law firm of Weltman, Weinberg and Reis, Co., L.P.A. ("Weltman"),[1] pursuant to the Ohio Corrupt Practices Act, R.C. 2923.31, et seq. ("OCPA"), and the federal Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. 1961, et seq. ("RICO").

{¶3} The Dixons alleged in their original complaint that the defendants participated in a pattern of corrupt activity, in violation of both the OCPA and RICO during foreclosure proceedings that HNB had initiated against the Dixons' adult daughter, on a parcel of residential property. The Dixons had a mortgage interest on the property, and HNB subsequently named them as defendants. In the instant case, the Dixons

---

[1] The six individual Weltman attorneys were voluntarily dismissed from the action on September 16, 2013.

alleged they were unlawfully deprived of their interest in the property when defendants obtained a default judgment against them and their daughter, because the Dixons allege that the defendants failed to properly serve them with the complaint.

{¶4} The Dixons subsequently filed an amended complaint, removing the RICO claims alleged in Counts 3 and 4. On July 25, 2013, defendant HNB filed a motion to dismiss the Dixons' amended complaint, pursuant to Civ.R. 13(A). The motion was ripe for ruling on August 5, 2013, and the trial court granted the motion on August 8, 2013. As of August 8, 2013, the Dixons had not filed a brief in opposition.

{¶5} On August 2, 2013, the Dixons filed a motion for enlargement of time to respond to all pending motions. The Dixons' motion was not granted until August 9, 2013, one day after HNB's motion was granted.

{¶6} On July 26, 2013, defendant Third Federal also filed a motion to dismiss, which the Dixons opposed. On August 23, 2013, the Dixons filed a motion for reconsideration of the court's judgment granting HNB's motion to dismiss, which HNB opposed. On September 17, 2013, the court held a hearing to address all outstanding motions. The transcript of that hearing was not filed in the instant case.

{¶7} On September 26, 2013, the trial court denied the Dixons' motion to reconsider its order granting HNB's motion to dismiss and also granted Third Federal's motion to dismiss. The Dixons now appeal from the trial court's judgments granting Third Federal's motion to dismiss and denying their motion for reconsideration. They raise seven assignments of error.

**Third Federal's Motion to Dismiss**

{¶8} In their first assignment of error, the Dixons argue the trial court erred in granting Third Federal's motion to dismiss. In their third assignment of error, they argue the trial court erred in dismissing the OCPA claim against Third Federal. These two assignments of error are interrelated and shall be addressed together.

{¶9} We review an order dismissing a complaint for failure to state a claim for relief de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44. In *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), the Ohio Supreme Court established the standard of review that is to be applied to a motion to dismiss pursuant to Civ.R. 12(B)(6), holding that:

> [i]n order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ.R. 12(B)(6)), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. (*Conley v. Gibson*, 355 U.S. 41 [78 S.Ct. 99, 2 L.Ed.2d 80], followed.)

*Id.* at the syllabus. When reviewing a Civ.R. 12(B)(6) motion to dismiss, we must accept the material allegations of the complaint as true and make all reasonable inferences in favor of the plaintiff. *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791.

{¶10} However, "unsupported conclusions of a complaint are not considered admitted * * * and are not sufficient to withstand a motion to dismiss." *State ex rel. Hickman v. Capots*, 45 Ohio St.3d 324, 324, 544 N.E.2d 639 (1989). To prevail on the

motion, it must appear from the face of the complaint that the plaintiff can prove no set of facts that would justify a court granting relief. *O'Brien* at paragraph one of the syllabus.

{¶11} The Dixons argue the trial court erred in relying on *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), in dismissing their claims. They contend that based on these cases, the trial court erroneously held their amended complaint to stricter standards and requirements than necessary. We disagree.

{¶12} In *Tuleta v. Med. Mut. Of Ohio*, 8th Dist. Cuyahoga No. 100050, 2014-Ohio-396, ¶ 30, this court reversed the trial court's judgment in which the trial court relied upon *Bell Atlantic* and *Iqbal*, finding that neither the Ohio Supreme Court nor this court had adopted the heightened federal pleading standards set forth in these two cases.

{¶13} Whereas this court has not adopted the stricter federal pleading standards for *all* cases, case law clearly establishes that this court has adopted stricter standards for cases in which RICO and/or OCPA claims are alleged. The complaint in *Tuleta* did not contain RICO or OCPA claims, and therefore was not subject to the more stringent requirements under which the pleading in the instant case is reviewed.

{¶14} In *Universal Coach, Inc. v. New York City Transit Auth.*, *Inc.*, 90 Ohio App.3d 284, 629 N.E.2d 28 (8th Dist.1993), this court discussed the degree of specificity required in pleadings alleging OCPA violations, and set forth a stricter standard of pleading for RICO and OCPA claims. This court pointed out that OCPA is directly adopted from RICO, and despite some minor differences, this court is in no way

prohibited from applying federal requirements of pleading specificity when addressing

OCPA claims before the court.    *Id*. at 292.

{¶15} To survive a motion to dismiss, the court in *Universal* held that the

complaint must allege the following specific elements:

> The United States Supreme Court and numerous other federal courts have examined the elements required to establish a RICO violation: (1) conduct of the defendant which involves the commission of two or more of specifically prohibited state or federal criminal offenses; (2) the prohibited criminal conduct of the defendant constitutes a pattern of corrupt activity; and (3) the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise.  *Sedima S.P.R.L. v. Imrex Co.* (1985), 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346.  *We hold that the failure of a plaintiff to plead any of the elements necessary to establish a RICO violation results in a defective complaint which cannot withstand a motion to dismiss as based upon a failure to state a claim upon which relief can be granted.  Compare Van Dorn Co. Cent. States Can. Co. v. Howington,* 623 F.Supp. 1548 (N.D.Ohio 1985).

*Id*. at 291 (Emphasis added.).

{¶16} In the instant case, the Dixons failed to allege that Third Federal's conduct

involved the commission of two or more of the specifically prohibited state criminal

offenses and that such conduct constituted a pattern of corrupt activity, as required by

R.C. 2923.31(E).   In fact, the Dixons failed to set forth a single criminal offense on the

part of Third Federal.   Rather, the Dixons' amended complaint listed the foreclosure

default, which was taken by HNB, as an example of criminal activity.

{¶17} Moreover, the Dixons failed to properly allege an enterprise as defined by

R.C. 2923.31(C):

> [I]n order to establish the existence of an "enterprise" under Ohio's RICO Act, there must be some evidence of: (1) an ongoing organization, formal or

informal; (2) with associates that function as a continuing unit; and (3) with a structure separate and apart, or distinct, from the pattern of corrupt activity.

*State v. Warren*, 10th Dist. Franklin No. 92AP-603, 1992 Ohio App. LEXIS 6755 (Dec. 31, 1992); *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

{¶18} In *Patton v. Wilson*, 8th Dist. Cuyahoga No. 82079, 2003-Ohio-3379, this court explained:

This court has held that an enterprise must be a separate entity that acts apart from the pattern of activity in which it engages. *U.S. Demolition & Contracting, Inc. v. O'Rourke Constr. Co.* (1994), 94 Ohio App.3d 75, 640 N.E.2d 235, citing *Old Time Enterprises, Inc. v. Internatl. Coffee Corp.,* (C.A.5, 1989), 862 F.2d 1213. A pattern of racketeering activity alone is insufficient to establish an enterprise. *Id.* Although Patton is correct that a corporation may be part of an enterprise, the enterprise may not simply be composed of a corporation and its officers or employees.

*Id.* at ¶ 20.

{¶19} The Dixons failed to allege that Third Federal is an enterprise in their amended complaint. It is clear on the face of the complaint that the Dixons also failed to establish that Third Federal was a part of an entity separate and apart from itself. There is no specific allegation in the complaint that there was "structure, continuity, and separate existence from the corrupt pattern." *Herakovic v. Catholic Diocese of Cleveland*, 8th Dist. Cuyahoga No. 85467, 2005-Ohio-5985, ¶ 24.

{¶20} Therefore, the Dixons' failure to plead their OCPA claims with the specificity required for such claims resulted in a defective complaint against Third Federal. The trial court did not err in granting Third Federal's motion to dismiss in its entirety.

**{¶21}** Accordingly, the Dixons' first and third assignments of error are overruled.

## Civil Conspiracy

**{¶22}** In their second assignment of error, the Dixons argue the trial court erred in dismissing the civil conspiracy claim against Third Federal.

**{¶23}** A civil conspiracy is "a malicious combination of two or more persons to injure another person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419, 650 N.E.2d 863 (1995), quoting *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 126, 512 N.E.2d 640 (1987).

**{¶24}** In order to prevail on a civil conspiracy claim, a plaintiff must demonstrate the existence of an underlying unlawful act. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475, 700 N.E.2d 859 (1998), citing *Gosden v. Louis*, 116 Ohio App.3d 195, 219, 687 N.E.2d 481 (9th Dist.1996).

**{¶25}** Further, the failure to successfully allege an OCPA violation negates a civil conspiracy cause of action. *Herakovic*, 2005-Ohio-5985 at ¶ 37, citing *Stachon v. United Consumers Club Inc.*, 229 F.3d 673, 677 (7th Cir.2000); *Miller v. Norfolk S. Ry. Co.*, 183 F.Supp.2d 996, 1002-03 (N.D.Ohio 2002). This court, in *Herakovic*, explained;

> Without these parameters, individual plaintiffs could fashion broad conspiracy claims that have the illusion of a pattern and of an enterprise, when, in fact, they have individual defendants acting in their own individual affairs and not that of an enterprise. This would nullify the mandate under OCPA that before one can claim conspiracy, one must allege with specificity an OCPA violation.

*Id.* at ¶ 18.

{¶26} As set forth above, the Dixons' complaint failed to state a claim for an OCPA violation because they did not plead that claim with specificity. Having failed to properly plead the underlying tort, there can be no civil conspiracy, and the trial court properly dismissed the Dixons' civil conspiracy claim.

{¶27} Accordingly, the Dixons' second assignment of error is overruled.

## Huntington National Bank's Motion to Dismiss

{¶28} In their fourth assignment of error, the Dixons argue that the trial court erred in granting HNB's motion to dismiss, arguing that the complaint alleged sufficient facts and legal theories upon which relief could be granted.

{¶29} HNB sought dismissal pursuant to Civ.R. 13(A). In its motion to dismiss, HNB argued that the Dixons' claims should be dismissed because they were already raised in separate litigation, as compulsory counterclaims in a foreclosure action that was still pending.[2]

{¶30} Civ.R. 13(A) provides:

(A) Compulsory counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

---

[2] *The Huntington Natl. Bank v. Debra Dixon, et al.*, Cuyahoga C.P. No. CV-06-585873 (Oct. 9, 2008).

The Ohio Supreme Court has held that "[a]ll existing claims between opposing parties that arise out of the same transaction or occurrence must be litigated in a single lawsuit pursuant to Civ.R. 13(A), no matter which party initiates the action." *Rettig Ents., Inc. v. Koehler*, 68 Ohio St.3d 274, 626 N.E.2d 99 (1994), paragraph one of the syllabus.

{¶31} In addition to promoting judicial economy, the rule is designed to assist courts with the "orderly delineation of res judicata." *Lewis v. Harding*, 182 Ohio App.3d 588, 2009-Ohio-3071, 913 N.E.2d 1048, ¶ 12 (8th Dist.). A party who fails to assert a compulsory counterclaim at the proper time is barred from litigating that claim in a subsequent lawsuit. *Id.*

{¶32} Ohio courts use the "logical relation" test to determine whether a claim is a compulsory counterclaim. *Rettig Ents.* at paragraph two of the syllabus. Under this test, a compulsory counterclaim exists if that claim "is logically related to the opposing party's claim" such that "separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts." *Id.*

{¶33} Accordingly, "multiple claims are compulsory counterclaims where they 'involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties.'" *Id.* at 279, quoting *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir.1961). "If both prongs are met, then the present claim was a compulsory counterclaim in the earlier action and is barred by virtue of Civ.R. 13(A)." *Rettig Ents.,*

*Inc. v. Koehler*, quoting *Geauga Truck & Implement Co. v. Juskiewicz*, 9 Ohio St.3d 12, 14, 457 N.E.2d 827 (1984).

{¶34} In the instant case, the Dixons' claims meet both prongs of the logical relation test. The Dixons' claims 1) existed at the time of HNB's pleading in the foreclosure action, and 2) arose out of the transaction that is the subject matter of the foreclosure action.

{¶35} The Dixons argue the trial court must have gone outside the four corners of the complaint to determine whether or not these claims were compulsory counterclaims in the foreclosure action. However, in the amended complaint, the Dixons themselves set forth the facts of the foreclosure action in great detail, referring to "the instant mortgage foreclosure action" multiple times. Indeed, it is evident from the face of the complaint that the Dixons' claims not only existed at the time of HNB's foreclosure action but also that their claims arose out of the transaction that was the subject of the foreclosure action.

{¶36} Therefore, the trial court did not err in granting HNB's motion to dismiss pursuant to Civ.R. 13(A). Accordingly, the Dixons' fourth assignment of error is overruled.

### Time to Respond

{¶37} In their fifth assignment of error, the Dixons argue the trial court abused its discretion when it dismissed their claims against HNB without giving them an opportunity to respond.

**{¶38}** Although an abuse of discretion is typically defined as an unreasonable, arbitrary, or unconscionable decision, *State v. Beavers*, 10th Dist. Franklin No. 11AP-1064, 2012-Ohio-3654, ¶ 8, we note that no court has the authority, within its discretion, to commit an error of law. *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 70; *State v. Peterson*, 10th Dist. Franklin No.12AP-646, 2013-Ohio-1807, ¶ 21.

**{¶39}** Loc.R. 11 of the Court of Common Pleas of Cuyahoga County, General Division, requires a party opposing a motion, other than a motion for summary judgment, to file their brief in opposition within seven calendar days after service by mail. Civ.R. 6(D) extends the seven day window to 10 days, allowing additional time for service of the motion.

**{¶40}** HNB filed it's motion to dismiss on July 25, 2013. The trial court granted this motion 14 days later, on August 8, 2013. The motion was ripe for ruling as early as August 5, 2013. On August 2, 2013, The Dixons filed a motion for enlargement of time to respond to all pending motions. However, plaintiffs' motion was not granted until August 9, 2013, a day after the trial court granted HNB's motion to dismiss.

**{¶41}** On August 23, 2013, after the court had granted HNB's motion to dismiss, the Dixons filed a motion for reconsideration of the court's dismissal. HNB filed a brief in opposition on September 6, 2013. On September 26, 2013, the trial court denied the Dixons' motion for reconsideration, finding that the Dixons were afforded more than ten days in which to respond to the motion to dismiss.

{¶42} The record clearly supports the fact that the court ruled on HNB's motion after the motion became ripe for ruling. The court's decision to grant the Dixons an enlargement of time to respond to remaining pending motions is separate from the fact that it did not extend the response time to HNB's motion prior to ruling on it.

{¶43} The court's denial of the Dixons' motion for reconsideration supports the conclusion that the court's granting of HNB's motion and the subsequent granting of the Dixons' motion for enlargement of time was not a mistake or coincidence. We find no abuse of discretion in the denying of the Dixons' motion to reconsider.

{¶44} Accordingly, the Dixons' fifth assignment of error is overruled.

## Due Process

{¶45} In their sixth assignment of error, the Dixons argue that the trial court denied them their due process rights when the court granted HNB's motion to dismiss before the Dixons filed a response.

{¶46} Due process requires that an individual be given notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). To establish either a procedural or substantive due process claim, a plaintiff must first identify the constitutionally protected interest of which he was deprived. *Bd. of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

{¶47} The Dixons fail to cite to any case law or evidence in the record to support their contention that the trial court's judgment granting HNB's motion to dismiss violated

their due process rights. As discussed above, the Dixons had an opportunity to respond and failed to respond before the response deadline had passed. This is not a case where the court granted a motion to dismiss before a response was due. The Dixons had an opportunity to be heard. Therefore, we find that the Dixons' due process rights were in no way violated by the court's order.

{¶48} Accordingly, the Dixons' sixth assignment of error is overruled.

## Conversion of HNB's Motion

{¶49} In the seventh assignment of error, the Dixons argue the trial court erred in granting HNB's motion to dismiss, when the motion should have been converted to a motion for summary judgment.

{¶50} Again, the Dixons argue the trial court looked outside of the four corners of the complaint in order to make its decision to grant HNB's motion to dismiss. They contend the motion should have been converted to a motion for summary judgment. There is simply no evidence to support this claim.

{¶51} In reviewing the amended complaint, the Dixons themselves admitted that HNB had filed a foreclosure action against them that was still pending. The Dixons specified in the amended complaint that they had a $100,000 mortgage lien on their daughter's property and that their daughter's property was the subject of an ongoing foreclosure action. The court did not need to confirm these allegations; it simply accepted these admissions as true. It follows that the trial court need not have converted

HNB's motion to dismiss to a motion for summary judgment in order to properly rule upon it.

**{¶52}** Accordingly, the Dixons' seventh assignment of error is overruled.

**{¶53}** Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
MELODY J. STEWART, J., CONCUR